THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK RAILWAYS COMPANY et al., Appellants, *v.* THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK FOR THE FIRST DISTRICT et al., Respondents.

**Public service commission — when order requiring re-organized railroad corporation to set aside part of its gross revenue for " accrued amortization of capital " not authorized by the statute (Public Service Commissions Law [Cons. Laws, ch. 48], §§ 4, 52).**

The public service commission of the first district, after approving the plan of re-organization of a street railway company and the execution of mortgages to secure the bonds of the new company, by a further order required the company, before paying any dividends on its stock or interest on its income bonds, to expend each month for maintenance and depreciation during the month twenty per cent of its gross operating revenue for such month, and if this amount was not expended within the month, to credit the unexpended portion thereof to an account called " Accrued Amortization of Capital." *Held*, that such order is not authorized by the statute (Public Service Commissions Law, §§ 4, 52) and that the determination of the commission should be annulled. (*Matter of Quinby* v. *Public Service Commission*, 223 N. Y. 244, followed.)

*People ex rel. N. Y. Railways Co.* v. *Public Service Commission*, 181 App. Div. 339, reversed.

(Argued April 24, 1918; decided May 14, 1918.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 18, 1918, which dismissed a writ of certiorari and affirmed an order of the defendant public service commission.

The facts, so far as material, are stated in the opinion.

*Richard Reid Rogers* and *J. Lufton Mason* for New York Railways Company, appellant. The commission was without power to make the order requiring this relator to set aside each month a sum equal to twenty

per cent of its gross operating revenue to cover maintenance and depreciation. (*People* v. *Willcox,* 200 N. Y. 423; *People ex .rel. D. & H. Co.* v. *Stevens,* 197 N. Y. 1; *People ex rel. B. L., H. & P. Co.,* 203 N. Y. 7.) The depreciation order was in conflict with the orders made in the same proceeding approving the reorganization of the Metropolitan Street Railway Company and the issue of the bonds thereunder. (*People ex rel. T. A. Ry. Co.* v. *Public Service Comm.,* 203 N. Y. 299.)

*Burt D. Whedon* and *S. Sidney Smith* for Frank L. Hall et al., appellants. The order of the commission requiring New York Railways Company to expend or set aside each month for maintenance and depreciation twenty per cent of its gross operating revenue was not authorized by the Public Service Commissions Law and is, therefore, void. (*People ex rel. N. Y., etc., R. R. Co.* v. *Willcox,* 200 N. Y. 423; *Matter of Quinby* v. *Public Service Comm.,* 223 N. Y. 244; *Vil. of Fort Edward* v. *H. V. Ry. Co.,* 192 N. Y. 139; *People ex rel. S. S. Traction Co.* v. *Willcox,* 196 N. Y. 212; *People ex rel. D. & H. Co.* v. *Stevens,* 134 App. Div. 99; *Railroad Comrs.* v. *O. R. & N. Co.,* 17 Ore. 65; *Interstate Commerce Comm.* v. *Cincinnati Ry. Co.,* 167 U. S. 479; *Siler* v. *L. & N. R. R. Co.,* 213 U. S. 175; *United States* v. *Chase,* 135 U. S. 261; *United States* v. *Sheldon,* 2 Wheat. 119; *United States* v. *Wiltberger,* 5 Wheat. 95; *United States* v. *Morris,* 14 Pet. 475; *United States* v. *Hartwell,* 6 Wall. 385; *United States* v. *Reese,* 92 U. S. 214.)

*Oliver C. Semple* and *William L. Ransom* for respondents. The uniform system of accounts prescribed by the commission for street railroad corporations required the company as a legal obligation to provide for maintenance and depreciation of its properties out of earnings. (*People ex rel. K. C. Lighting Co.* v. *Straus,* 178 App.

Div. 840; *People ex rel. B. O. Co.* v. *Public Service Comm.*, 153 App. Div. 129; *Interstate Commerce Commission* v. *Goodrich Transit Company*, 224 U. S. 194; *Kansas City Southern Co.* v. *United States*, 231 U. S. 423; *People ex rel. B. H. R. R. Co.* v. *Tax Comrs.*, 69 Misc. Rep. 646; *People ex rel. N. Y. & Q. Gas Co.* v. *McCall*, 219 N. Y. 84.) The commission had power, under the law, to make the order objected to, because such an order, requiring the company to fulfill its legal obligation, was necessary in order to carry out the purposes of the enactment of the Public Service Commissions Law; in fact, to prevent the defeat of those purposes. . (*People ex rel. D. & H. Co.* v. *Public Service Comm.*, 140 App. Div. 839; *People ex rel. Bridge Operating Co.* v. *Public Service Comm.*, 153 App. Div. 129; *People ex rel. U. & D. Co.* v. *Public Service Comm.*, 171 App. Div. 607; *People ex rel. K. C. Lighting Co.* v. *Willcox*, 156 App. Div. 603; *People ex rel. B. H. R. R. Co.* v. *Public Service Comm.*, 157 App. Div. 698; *People ex rel. United Traction Co.* v. *Public Service Comm.*, 167 App. Div. 498; *People ex rel. R. L. & R. R. Co.* v. *McCall*, 169 App. Div. 925; *Public Service Comm.* v. *N. Y. Rys. Co.*, 77 Misc. Rep. 487; *Public Service Comm.* v. *N. Y. & Q. C. Ry. Co.*, 170 App. Div. 580; *People ex rel. L. I. R. R. Co.* v. *Public Service Comm.*, 170 App. Div. 429.) It being the relator's legal duty to make provision for replacement, currently out of earnings, in order that the value of the property invested may be kept unimpaired and that the property may· be kept such as can render adequate service at reasonable rates, the public service commissions are empowered and required to enforce that duty. (*Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1; *People ex rel. B. L., H. & P. Co.* v. *Stevens*, 203 N. Y. 25; *C. T. & T. Co.* v. *City of Louisville*, 187 Fed. Rep. 637; *People ex rel. N. Y., N. H. & H. R. R. Co.* v. *Willcox*, 200 N. Y. 423.)

CUDDEBACK, J. Though this is an important proceeding, it presents nevertheless a simple question. The issue involves simply the interpretation and meaning of certain sections of the Public Service Commissions Law.

The Metropolitan Street Railway Company was in the hands of receivers for several years and on December 29, 1911, the properties of the company were sold, pursuant to a decree in foreclosure of the United States Circuit Court, to a committee of the bondholders of the company. The bondholders committee had prepared a plan of re-organization of the company under sections 9 and 10 of the Stock Corporation Law of this state. The plan was approved by the public service commission, and, pursuant thereto, the properties of the company were to be taken over by a new corporation to be organized, and bonds and stock of the new company were to be issued as follows:

| | |
|---|---:|
| Refunding 4% gold bonds | $16,768,100 |
| 5% income gold bonds | 31,933,400 |
| Stock | 17,500,000 |

Pursuant to this plan the New York Railways Company was organized and the properties of the old company were conveyed to it. Then mortgages were prepared to secure the bonds issued, and were presented to the public service commission for approval. Subsequently, and on February 27, 1912, the public service commission consented to the execution of the mortgages.

The mortgages required the mortgagor to maintain, replace and renew the mortgaged property out of the earnings of the company. The interest on the income bonds was to be paid solely out of the net income of the mortgagor, and the net income was to be determined after setting aside the reserve provided for in the mortgage. The interest on the income bonds was not

cumulative, and if not earned in any year was lost to the bondholders.

Subsequently, by a further order dated on the same day, February 27, 1912, the public service commission required the relator before paying any dividends on its stock or interest on its income bonds, to expend each month beginning January 1, 1912, for maintenance and depreciation during the month 20% of its gross operating revenue for such month, and if this amount was not expended within the month, to credit the unexpended portion thereof to an account called "Accrued Amortization of Capital."

The relator objected to the provisions of this last-mentioned order and brought this proceeding to review the same. The sole question here is whether the commission had power to make the order.

The public service commission bases its authority to make the order under review on section 52 of the Public Service Commissions Law (Cons. Laws, ch. 48).

Section 52 provides that the public service commissions may establish a system of accounts to be used by railroad corporations or other common carriers, and prescribe the manner in which such accounts shall be kept, and may, after a hearing, prescribe by order the accounts in which particular outlays and receipts shall be entered, charged or credited.

In other sections of the statute it is prescribed that the commission shall have supervision over all railroads and other common carriers with power to examine the same and keep informed as to their general condition and with respect to their compliance with the provisions of law, and the orders of the commissions. Such corporations are required to furnish safe and adequate service to the public at reasonable rates and without discrimination as between persons or localities, and whenever the commission shall be of the opinion that

any railroad or other common carrier has violated the provisions of the act, they may order the railroad or other common carrier to comply with the law. The power of such corporations to borrow money and to issue stock or bonds can be exercised only with the approval of the commission. Section 4 of the act contains general provisions that the commission shall have " all powers necessary or proper to enable it to carry out the purposes of this chapter."

Section 52, on which the commission relies, and which relates to the establishment of a system of accounts, was plainly intended to make the method of accounting by these corporations uniform so that the accounts could be readily comprehended by those required to examine the same. By establishing a system of accounts the corporations were required to show under particular heads what they had done. It was not to regulate the management of their finances but to show what the management was.

The other sections of the act to which reference has been made, clearly do not in express terms authorize the commission to require the creation of a reserve fund to renew the plant when the same shall be worn out or shall become obsolete. It is not pretended by anybody that they do.

The power of the public service commission is exten-, sive, and the act creating the commission should be construed in the same spirit in which it was enacted. Still, when a particular power is exercised by the commission, or is claimed for it, that power should have its basis in the language of the statute, or should be necessarily implied therefrom. I think that the assertion of authority under review here is outside of and beyond the statute. In *Matter of Quinby* v. *Public Service Commission* (223 N. Y. 244), a very recent case, we held that the legislature had not delegated to the public service commission the power to increase the rates of

fare that may be charged by street surface railroads in the city of Rochester, on the ground that we found no word in the statute which disclosed a legislative intent to delegate such power to the commission.

The decision in *Matter of Quinby* v. *Public Service Commission (supra)* is controlling here and requires us to hold that the public service commission had no authority to make the order requiring the relator to reserve 20% of its gross operating revenue for maintenance and depreciation, and for the creation of the amortization of capital account.

The order appealed from should be reversed and the determination of the public service commission annulled, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., CHASE, CARDOZO and McLAUGHLIN, JJ., concur; COLLIN, J., taking no part; HOGAN, J., dissenting.

Order reversed, etc.