[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 376 
Though this is an important proceeding, it presents nevertheless a simple question. The issue involves simply the interpretation and meaning of certain sections of the Public Service Commissions Law.
The Metropolitan Street Railway Company was in the hands of receivers for several years and on December 29, 1911, the properties of the company were sold, pursuant to a decree in foreclosure of the United States Circuit Court, to a committee of the bondholders of the company. The bondholders committee had prepared a plan of re-organization of the company under sections 9 and 10 of the Stock Corporation Law of this state. The plan was approved by the public service commission, and, pursuant thereto, the properties of the company were to be taken over by a new corporation to be organized, and bonds and stock of the new company were to be issued as follows:
 Refunding 4% gold bonds ........ $16,768,100 5% income gold bonds ........... 31,933,400 Stock .......................... 17,500,000 ===========
Pursuant to this plan the New York Railways Company was organized and the properties of the old company were conveyed to it. Then mortgages were prepared to secure the bonds issued, and were presented to the public service commission for approval. Subsequently, and on February 27, 1912, the public service commission consented to the execution of the mortgages.
The mortgages required the mortgagor to maintain, replace and renew the mortgaged property out of the earnings of the company. The interest on the income bonds was to be paid solely out of the net income of the mortgagor, and the net income was to be determined after setting aside the reserve provided for in the mortgage. The interest on the income bonds was not *Page 377 
cumulative, and if not earned in any year was lost to the bondholders.
Subsequently, by a further order dated on the same day, February 27, 1912, the public service commission required the relator before paying any dividends on its stock or interest on its income bonds, to expend each month beginning January 1, 1912, for maintenance and depreciation during the month 20% of its gross operating revenue for such month, and if this amount was not expended within the month, to credit the unexpended portion thereof to an account called "Accrued Amortization of Capital."
The relator objected to the provisions of this last-mentioned order and brought this proceeding to review the same. The sole question here is whether the commission had power to make the order.
The public service commission bases its authority to make the order under review on section 52 of the Public Service Commissions Law (Cons. Laws, ch. 48).
Section 52 provides that the public service commissions may establish a system of accounts to be used by railroad corporations or other common carriers, and prescribe the manner in which such accounts shall be kept, and may, after a hearing, prescribe by order the accounts in which particular outlays and receipts shall be entered, charged or credited.
In other sections of the statute it is prescribed that the commission shall have supervision over all railroads and other common carriers with power to examine the same and keep informed as to their general condition and with respect to their compliance with the provisions of law, and the orders of the commissions. Such corporations are required to furnish safe and adequate service to the public at reasonable rates and without discrimination as between persons or localities, and whenever the commission shall be of the opinion that *Page 378 
any railroad or other common carrier has violated the provisions of the act, they may order the railroad or other common carrier to comply with the law. The power of such corporations to borrow money and to issue stock or bonds can be exercised only with the approval of the commission. Section 4 of the act contains general provisions that the commission shall have "all powers necessary or proper to enable it to carry out the purposes of this chapter."
Section 52, on which the commission relies, and which relates to the establishment of a system of accounts, was plainly intended to make the method of accounting by these corporations uniform so that the accounts could be readily comprehended by those required to examine the same. By establishing a system of accounts the corporations were required to show under particular heads what they had done. It was not to regulate the management of their finances but to show what the management was.
The other sections of the act to which reference has been made, clearly do not in express terms authorize the commission to require the creation of a reserve fund to renew the plant when the same shall be worn out or shall become obsolete. It is not pretended by anybody that they do.
The power of the public service commission is extensive, and the act creating the commission should be construed in the same spirit in which it was enacted. Still, when a particular power is exercised by the commission, or is claimed for it, that power should have its basis in the language of the statute, or should be necessarily implied therefrom. I think that the assertion of authority under review here is outside of and beyond the statute. In Matter of Quinby v. Public Service Commission (223 N.Y. 244), a very recent case, we held that the legislature had not delegated to the public service commission the power to increase the rates of *Page 379 
fare that may be charged by street surface railroads in the city of Rochester, on the ground that we found no word in the statute which disclosed a legislative intent to delegate such power to the commission.
The decision in Matter of Quinby v. Public ServiceCommission (supra) is controlling here and requires us to hold that the public service commission had no authority to make the order requiring the relator to reserve 20% of its gross operating revenue for maintenance and depreciation, and for the creation of the amortization of capital account.
The order appealed from should be reversed and the determination of the public service commission annulled, with costs in this court and in the Appellate Division.
HISCOCK, Ch. J., CHASE, CARDOZO and McLAUGHLIN, JJ., concur; COLLIN, J., taking no part; HOGAN, J., dissenting.
Order reversed, etc.